5-18-0288, Captain D's, LLC, v. The Workers' Compensation Commission Counsel, you may proceed. May it please the Court, Counsel. Good morning, Your Honors. My name is Dan Sanchez, and I represent the appellant and the employer in this workers' compensation matter, Captain D's, LLC. To begin, I want to touch on the employee's motion to dismiss for lack of jurisdiction, which is based on Section 19-F1 of the Employer of the Workers' Compensation Act. That section of the act provides two methods by which a party can, in a seeking review of a commission's decision to the circuit court, can demonstrate that adequate notice to the commission was provided by the party seeking that review. First, the party seeking the review can exhibit to the circuit clerk at a time of seeking judicial review proof of filing with the commission of its notice of intent to seek that review. Alternatively, that party can file an affidavit of the attorney indicating and providing that due written notice was given to the secretary or assistant secretary of the commission. Was there no attorney's affidavit filed in this case? There was. The affidavit of my partner, Kevin Adrian, was filed at the time that we sought judicial review on April 27, 2017. The primary rule of statutory construction is obviously to ascertain and give effect to the legislative intent of the statute. This can be gleaned from the common sense reading of the plain meaning of the statutory language. Now, in this case, the first part, the first meaning of complying with Section 19F1 only requires that the party seeking review exhibit to the circuit clerk proof that it has notified in writing of its intent to seek review. And when does it do that? In Section 19F1, there are two basic clauses. No request for summons may be filed and no summons shall issue unless the party seeking to review the decision of the commission shall exhibit to the circuit court proof of filing with the commission of the notice of intent to file for review in the circuit court or an affidavit of the attorney setting forth that notice of intent for review in the circuit court that has been given in writing to the secretary or the assistant secretary of the commission. Yeah, and so the answer is? And so the answer is in that paragraph, it indicates that the party seeking review can exhibit to the clerk proof that it has provided a written notice to the commission. When? What's that? When? Within the 20 days of receipt of the commission's decision. When did you file a request for summons? We requested summons on April 27, 2017. And when did you exhibit your? On April 27, 2017. Same day? Same day. OK. We included with our materials presented to the clerk our letter which was sent to the commission. Well, the reason I asked, we had an argument earlier yesterday as to can it be done any time within that 20 days. I believe it can, and I will address that with regard to our citation of Jonesgate. But you didn't? We filed it at the same time. So that's not an issue for you then? No. Thank you. He's just being proactive. On April 27, 2017, we exhibited to the clerk a copy of the letter which we had sent to the commission. You're not going to have any time left for the basis of your appeal if you continue to go on and on about the jurisdiction. We understand the issue. In terms of the merits of the appeal, this is a January 3, 2001 injury. The employee fell off the ladder, claimed injuries to his left leg, and subsequently claimed a surgical injury as a result of the fall as well. The issue I would like to focus on in my limited time here today is whether the circuit court erred in reversing the commission's decision, which denied benefits as to the net. And that is the only portion of that underlying case that is relevant to this appeal, is the surgical aspect of the situation. Review in court is not to discard findings of the commission when, merely because of difference of interests, it can be drawn from the same evidence. For a finding to be contrary to the manifest weight of the evidence, opposite conclusion must be readily apparent. Now, there's ample evidence in this case that the neck issues complained of by the employee were pre-existing. They progressed in the natural course of a degenerative condition of the neck over many years following his fall at work. An opposite conclusion is not readily apparent. Dr. Boyer was your expert? Dr. Boyer performed a file review. The commission believed him over Heffner, Albana, and Poulos, right? Correct. And that's your argument that they... That is, our argument is that Albana, Heffner, and Poulos were not operating with complete information as to any complaints that the employee had prior to his fall. And the commission believed your argument? The commission, the arbitrator and the commission, believed our argument. So it's within the commission's province to assess the credibility of the witnesses, the weight of the expert's testimony, so that's what you're hanging your head on, right? Correct. Okay. We believe there's ample evidence that that is the case. In reaching his conclusions, overturning the commission's decision in September of 2015, Judge Machine reweighed the evidence. He substituted his own judgment for that to be commissioned and assumed facts which are not supported by the record. He indicated that Dr. Ahmed, who had seen the employee in the year 2000 before the alleged work injury, that at that time the employee made no complaints of neck injury or neck symptoms. However, just prior to that portion of Judge Machine's order, he acknowledged that the employee, on November 30, 2000, had reported sharp shooting pain up the back of his neck and headaches. What about the fact that he had three expert witnesses and you had one? Again, those three opinions, those three causation opinions, were not based on complete information. What if they were? Would you automatically, would he automatically win the case? No. Why not? The arbitrator and the commission, in adopting and affirming the arbitrator's decision, weighed all of the evidence together, in conjunction with the objective findings prior to the day of the injury and the progression of his symptoms, the fact that the employee was released time and time again over the five years after the accident by Dr. Heffner, who advised that the symptoms had resolved and then would come back. Are you familiar with case law that says the number of experts on either side doesn't, in and of itself, carry the day? You're aware of that? Right. And the arbitrator is not required to simply accept the opinions of the expert. You can weigh those opinions and the weight of those opinions against the other evidence presented in the case. And that's your saying why you should win this case, right? Right. Okay. Other facts relied on by Judge Machine in overturning the commission's decision were that the results of the injury that, or the results of the x-ray that was performed prior to this incident, about a month before this fall, were basically denied. He acknowledged, however, that there were degenerative arthritic changes at C3-4, which are the same findings that were shown on MRI on March 27, 2001, after the fall. He indicates that Dr. Ahmed's records don't establish that there was a cervical injury prior to the date of the employee's fall. But Dr. Ahmed ordered physical therapy prior to this fall to treat and evaluate the neck. So clearly there was something going on with the neck prior to the employee's fall at work. And the arbitrator in the commission weighed that evidence against the opinions of the other doctors. Judge Machine presumed that the employee might have— No, you really don't have to pick apart the judge's decision. Okay. We're looking at the commission's decision. I mean, it's not your burden to pick apart the judge's decision. Okay. Just so you know. The fact of the matter is that the circuit court's decision, however, relied on inferences that are not supported by the record. For example— I think what Judge Hudson is trying to tell you is you should be arguing to us why the original decision was not against the manifest weight of the evidence, because we don't care what the circuit court's reasoning is. We only review his ultimate judgment, affirmed, reversed, remanded, whatever it is. Your argument is that the commission's original decision is not against the manifest weight of the evidence, and therefore it should be reinstated. That's your argument. The employee had signs of degenerative condition of T3-4 prior to the injury. The same findings were shown in March of 2001 after the injury. Over the course of the next five, six years, no surgery was recommended. The employee treated with Dr. Hefner multiple times. Dr. Hefner, on the initial visit, did say that he would suspect that the fall off of the ladder was the cause of the employee's complaints. However, Dr. Hefner was told that at the time of the fall, the employee had received care for his neck and received x-rays at the hospital two days after the fall. That is not true. And so the only basis for Dr. Hefner's opinion as to causation is what was reported to him by the employee in that it would make sense that if this is the only history he was provided, then he suspected that the fall was what caused the injury. Nevertheless, the employee was released that same year without so much as an injection in the cervical spine. He came back. He returned to Dr. He was released in August of 2001 without so much as an injection. No surgery was recommended at that time and his symptoms had resolved. He returned ten months later in May of 2002 with recurrent problems. And in June of 2002, Dr. Hefner again released him from care with no recommendation for treatment. Eighteen months later, the employee returned to Dr. Hefner in June of 2004, and he was again released in April of 2004. Throughout this whole time, no surgery was recommended. And throughout that course, further testing was done and there were seen additional levels affected by this degenerative arthritic condition in the employee's cervical spine. As Dr. Byers pointed out in his opinion, this is indicative of a natural progression of the degenerative state of the employee's cervical spine, not the result of the fall in January of 2001. And so this waxing and waning of symptoms, the fact that he would treat for a period and then have a long period in between where no treatment was sought for the neck, is also indicative of this degenerative condition in the employee's neck. I would also point out that in Dr. Poulos' deposition, he was specifically asked if he was made aware of the fact that the employee had treated prior to this work incident for complaints of neck and that physical therapy had been ordered prior to the fall. Would that change his opinion? He indicated that he didn't know if that would change his opinion. It could. It would certainly reshape the issue and he would have to consider that. So certainly that information is relevant and it was not against the manifest weight of the evidence for the arbitrator, for the commissioner, for the commission, to weigh that against the opinions of the doctors who did not have that complete information. And in the case of Dr. Efner, who was specifically told that the employee had received diagnostic testing and treatment on his neck shortly after the accident, which again, is not correct. And so for those reasons, we don't believe that the opinion or the decision of the commission was against the manifest weight of the evidence and that the circuit court's ruling was in error. We would ask that the commission's decision, original decision, be reinstated. Can I make a suggestion to you? Yes, Your Honor. When you write a brief, you're supposed to follow the Supreme Court rules. You have a table of contents on the record on appeal. It says answer pages 38 through 911. Supreme Court Rule 342 requires you to tell us the beginning page of the testimony of every witness, the beginning page of the cross-examination of every witness, and the beginning page of the redirection. You leave us the job of looking through over 800 pages of record to try and figure out where this stuff is at. That's not our job. That's your job. So when you do another brief, make sure you follow 342, especially on the table of contents for the record. I apologize, Your Honor. By the way, you're not the only one that's done this. We've had this problem yesterday, too, so it's a frequent problem. Okay. Are we finished? You'll have time to reply. Five minutes. Okay. Counsel, you may respond. Thank you, Your Honor. May I please report? Kevin Hastliff, I'm the petitioner. I'm kind of torn whether to go to the motion to dismiss or what Counsel just talked about with the merits of the case. And I think I'll stand by my outline and go with the motion to dismiss. Counsel said that they had filed an affidavit at the time of the 27th. They filed an affidavit, not the affidavit that they needed in this case. They filed an affidavit for a four-year obsolete statute with a probable cost of the record. That affidavit doesn't mention the cover letter at all. It doesn't say anything other than we paid you $35. Which isn't required anymore. Exactly. There are names on everything, and I was here for the argument yesterday morning, and there were direct questions from the federal court. It's a clear statute now, 19-F-4. I think it might have been changed to take some of the burden away and make things simpler. Couple that with Grodeska, if I remember that correctly, allowing a mailbox rule at this level between the commission and the circuit court is a lot easier to file. But back to... So on April 27th, when they appear in front of the clerk, they're offering a document that if they know the statute and the case law and the Supreme Court rules, that affidavit they're offering is improper. It doesn't meet 19-F-1, which was revised four years later, 2013. So that's their first problem. And when I was serving with these papers, I saw there was no notice of intent to file. It had to be right. It wasn't served right. I went to the courthouse and I double-checked. It's not in there. I filed a motion to dismiss. They filed a response with an affidavit from Mr. Dantzschatz, saying that he exhibited this cover letter. Well, that affidavit then separates from what happened on April 27th and what happened on June 12th when he filed his response, which is because they filed on the last day, they didn't leave any room for error. When he files the affidavit, he's brought in now the revised 19-F-1. He's brought in Supreme Court Rule 373, the mailbox rule. He's brought in Supreme Court Rule 12-B-3, which tells you how to comply with the Supreme Court rule, by telling you where you filed it, how you filed it, the date, the time, and so forth. And he brings it in and presents it. So he is saying he filed an affidavit in compliance with the former statute. Is that what you're saying? That's correct. But that doesn't give the court notice. I mean, the commission notice, there's no intent there of giving the commission notice of the intent to file, so he's not complied with the revised 19-F-1, as this court knows. The question is about this, because we're talking about the work out back. Strict compliance is the key here. And his strict compliance with the law in effect had been in effect for four years. This is not something that just changed briefly. Why would someone send $35 to the commission? For what purpose? For what purpose? Is it a donation to the state, or what? There's a reason for $35. I have, over the course of my practice, probably done that 150 times. We just had a practice. You would send the $35 whether you intended to appeal or not, just because your client has to make their mind up. You want to get it up there, and you try to get the receipt back. That was why you would do that. That doesn't necessarily mean you intend to appeal. You're just filing it or sending it up there. Well, the point is, there was no $35 required. That's correct. Okay, so I mean, that's not even relevant. It's strict compliance with the act in effect at the time, is your argument, right? Okay. So, when they file the apathy, but then they bring in all these other rules. And that's why I brought up the cases in the brief of Secure Insurance Company and Springfield Cult. Those, in my opinion, are the two most important cases for the issues in this appeal, which deal with, really, the mailbox rule and what you have to do to comply. In my view, if you look at everything, the cover letter they offer, clearly, undisputed, does not have the 12B3 requirements on it. There's no certificate. There's no affidavit. There's nothing. That letter is really where the paper's written on it. And that letter's still not in the court's file, other than in an exhibit to their response. It's not in that file. So, there's no notice of intent documented in the court's file, and the cover letter is not even in there. It is affidavit, which, as I said, indicated the exhibit is referred. He doesn't know, really, what happened to it after that. It's not in the court's file. He admits to that, but he doesn't recall them returning it or whatever. Chancellor, I mean, obviously, we will consider and move on that issue, but if Captain Deese is fortunate enough to get past that hurdle, what about the circuit court reversing the commission? Why was that a problem? The counsel had argued about this prior injury in 2000, and he calls it a neck injury. There's no neck injury. I want to do this in my briefing. I'll stand up on my brief on most of that, but my client went to the family doctor two months before this accident with muscle tension headaches. It's clear as anything in the doctor's on-edge records. That's why he was there. That's why he had physical therapy. Muscle tension headaches. There's no injury to that neck whatsoever. Never had problems with that neck. Had two visits with the doctor, two or three days of physical therapy, and that was it. And he falls off the ladder January 2001. For counsel to say that the doctors didn't have all the information, and that's why Dr. Heffner and Dr. Alexander and Dr. Poulos' opinions are not credible, is just wrong. Except the commission believes his doctor, right? The commission believes the doctor that they hired eight years later for medical record review after the respondent obtained an IME Section 80 from Dr. Albana. He's their doctor, and he buried it. Dr. Albana's record report just absolutely gave everything to the petitioner. This is what Dr. Albana had everything to review, including Dr. On-Edge records. On the first page of his report, as I pointed out in my brief, he had everything, including Dr. On-Edge records. What's your take on why the commission concluded that the causation opinions of the experts you've cited were not supported by the medical records? My opinion is the opposite of hers. I just can't. Reviewing that and only getting it any time, it just is nonsensical to me. I can't understand that, because Dr. Heffner was a treating neurosurgeon. By causation on the very first visit, not months or years later, he also told the court that he never recommended surgery. That is wrong. I point out in my brief on two occasions that Dr. Heffner, at the beginning, says, I think he's going to need surgery, and then he... My client just didn't want to have surgery. When did the records support that your client complained of neck injuries? When did he first do that, in your opinion? When he went back to Dr. On-Edge in late February, early March. It was early March. So isn't that an issue at all? No, because he had fallen off a ladder, and he basically just destroyed his knee and had to go to the neck. He was on schedule to have a total knee replacement. Patients are not always the best historians, but he testified. I was concerned about my knee. He couldn't get around, couldn't work. I think my client was very credible. He went back to work two months post-total knee replacement. I moved back to work with him three or four months after each cervical and spine surgery he had, and he continues to work. He has a lot of problems. You're saying he's more focused on the knees than the neck? Yes, and Dr. Blumholz, the treating nurse who did the surgery, addressed that in his deposition. He said, you know, he said, welcome to the real world. Patients have distracting injuries. And that's what happened, and my client was up front and discussed that and talked about that during the hearing itself and answered the questions that were brought to the table. So, counsel, on the vacuum, that's an understandable argument. But in light of the doctor's testimony, his finding of a natural progression of a degenerative condition, the totality of the two gives the commission sufficient evidence to make the finding we did, does it not? Well, I think it can, but I think we take it in the context of when did he get involved and why did he get involved. I guess my question would be, for eight years, responded never had an injury, never did anything in this case, didn't obtain a medical record in this case, didn't do anything, and I have a point. How can you do that? How do you not get the penalties? What is the medical basis for them to deny the claim? They had no doctor. The doctor had a fine causation in May 2001. What did they do for the next seven years? They got Dr. Ombanda to do a Section 8 exam, gave him all the medical records, every single one, and he says, this is great. Not only that, he thought this should have a four-level procedure on the neck, not a two-level, as Dr. Fuller did. After they get that report, seven months later, they send the records to Dr. Boyd, just the records to the in-court review, and nothing else. They got it back. Then, you know, there is the kind of doctor hunting, and I guess my question is, and I point out in my brief, why did they decide not to send their own lead doctor's opinion report, Dr. Ombanda, to Dr. Boyd? They did not send them. Why are they doing that? So, Dr. Boyd, does he say that? Yes. And in a lot of circumstances, that could be enough with a commission, but in the facts of this case, eight years down the road, and you want to say that somebody was not provided with all the medical records, the question would be, they gave Dr. Boyd or Ahmed and everything, but they did not tell about Dr. Ombanda. So, I understand where they can sort of hang their hat a little bit, but when you have two treating neurosurgeons and respondents examining neurosurgeons, that, to me, is what should carry the decision. I mean, Dr. Boyd's opinion is, you know, I just don't know if they would. I don't know how many doctors they tried to give their opinion before being found here. But I think Dr. Ombanda's report is, she carried them away, and then the two treating neurosurgeons, I think she carried them away. But I want to state that the doctors were given all the medical records, and it is incorrect to count them and say that they were not given that. But I'm not responding to that one. There are a lot of things that were in the interview that I responded to, and I'll stop there and just let that speak for itself. But he did not have a prior condition of an OB. If employees have to, if they have muscle tension, headaches, and they have a little therapy on their neck, and you have to think about that when you go to the emergency room, should I report that or say something about that when you just fell five or six feet off the concrete, or, you know, tell the doctor about that, who remembers muscle tension, headaches, you know, two to three months later? It's just, if you really look at everything and convince it to where it is, that's what they're going to have on, is, and he had this pre-existing condition, Dr. Kuhl suggested. They had every opportunity to pose Dr. Eppner a pre-existing condition. They had every opportunity to take the deposition of their section 8 contaminator. Dr. Albana, they didn't do that. They didn't even take the deposition of Dr. Boyd. They just put in the report. But I think that report has to be taken really in context of the circumstances and still it. But what was respondent's basis for denying of this claim in its entirety? They had two treating nurses saying it was related. They had their doctor saying it was related. What is the basis for denying that for seven years? They kept arguing that, arguing that, and there's no basis for it. Then they finally get Dr. Boyd to give them a favorable report, and that's what they're going to have on. I don't think that's supported by Dr. Kuhl's decision. We would ask that the appeal be dismissed based on our argument and we ask this court to follow the principle and security of that issue. Thank you, counsel. Counsel, you have time to reply, five minutes. Thank you. To touch briefly on the first portion of the closing counsel's argument regarding the certain compliance with the jurisdictional issue, I would like to point, Your Honors, to our brief, our citation of the Jones case. It suggests that there's actually a bifurcated analysis of the compliance with the statute regarding both the form and then the timing. If there's no substantial compliance with the statute, it's permitted as to the form of the notice given, and it's the timing of that notice that requires the strict compliance. And so our position is that— What was your notice? What's that? What was your notice? Our notice to the circuit court that we had provided, or our proof to the circuit court that we had provided notice to the commission was both our letter dated that date, which we had sent to the commission advising that we were seeking review to the circuit court, as well as our affidavit of Kevin J. Adrian. Was it filed within the 20-day period? It was filed within the 20-day period. The affidavit was filed within the 20-day period. At the same time that we filed the rest of our materials for judicial review. Is it in the record? It is. And so our argument is that those materials, even if deemed not in strict compliance with Section 19F1, are in substantial compliance because they advance the purpose of 19F1 in advising the commission and the circuit court that the employer was seeking judicial review of the commission's decision and that because those were filed within the 20-day period, the strict compliance aspect of the timing of those filings and that execution— Was met. Was met. You can see the form wasn't exactly in compliance with the new statute, but the other procedures were there. Right. And the Springfield Cole case that he cited actually discusses two other cases which find strict compliance with the form of certain notices and certificates of service to be adequate and substantially compliant. I want to get this clear. When you filed your application for the issuance of summons, Yes. what did you file on that day? We filed the request for summons. We filed half a day before the end, referencing our payment of the probable cost to the commission, which any reasonable person at the commission receiving that would understand that this is the employer's intent to seek review. So the affidavit that was filed on that day never said, we filed a notice of intent with the commission. Or read it to me. What does it say? What does this affidavit say? The affidavit says that, My name is Kevin Adrian. I'm the attorney director for Respondent Appellant Capital Deeds. On April 27th, I sent a firm check in the amount of $35 for the probable cost of the record to be filed as returns of summons payable to the Illinois Workers' Compensation Commission to be deposited with the office of the secretary of the commission. So our position is that So the question is, is that a notice of intent? Is that the mailing of the $35 equal to a notice of intent? A written notice to the secretary or assistant secretary of the commission. With regard to the other points made by What about the Rule 12? The opposing counsel was saying you didn't comply with that. Rule 12 being our position would be that the affidavit which was filed on that affidavit of the attorney is comparable and substantially compliant with a certificate of the attorney indicating that So it doesn't really follow Rule 12 either, does it? No. Well, regardless, the affidavit in and of itself You're saying close enough? Is that your argument? Close enough? Is it horseshoes? The affidavit in and of itself, however, is sufficient to comply with the second clause of 19F1 which allows the filing of an affidavit of the attorney indicating that written notice to the commission was provided. But 12B is still a clause, doesn't it? No. The affidavit acting on its own having been filed within the 20 days of receiving the commission's decision is sufficient to satisfy 19F1. Okay. With regard to Dr. Albana's report opposing counsel indicates that all of Dr. Ahmed's records have been provided. However, Dr. Albana's report makes no reference to the There's no indication that he received the pre-engagement records from late 2000. And so that representation is just not accurate that we can say that Dr. Albana had all of Dr. Ahmed's records to consider within the information that he was aware that there were these complaints prior to his fall in January of 2001. With regard, again, with regard to Dr. Hefner's initial decision that this was likely or he suspected that this was the result of his neck complaints as a result of his fall again, we would state that he was released from My time is up, Your Honors. Finish your statement. Our position is that the employee was released from care shortly thereafter with no surgery recommended. Any reference to potential need for surgery in the future is not the same as saying the employee needs surgery as a result of his fall. And there's no indication that Dr. Hefner over the 6 years after the injury would still say that this was the result of the fall and his opinion were based on the faulty information provided by the employee. Thank you. Thank you, counsel. Thank you, counsel, both for your arguments and this matter. It will be taken under advisement and written disposition shall issue.